CHARLES JONES, AS ASSIGNEE IN BANKRUPTCY OF CHARLES S. SCHLEIER, BANKRUPT, RESPONDENT, *v.* THOMAS WELWOOD AND ABBY WELWOOD, APPELLANTS.

*Arbitration — submission — award — must be as broad as — setting aside of award.*

One Abby Welwood, being the owner of certain lots, a contract was entered into by her husband with one Schleier, by which he, Schleier, was to sell the same, and receive a portion of the profits for his services in so doing.  Disputes having arisen as to the amount due thereunder, a contract was entered into by all the parties in interest, on January 10, 1872, to settle the same.  Subsequently this was rescinded by mutual consent, and thereafter, to settle numerous actions instituted against each other by these parties, and by the assignee in bankruptcy of Schleier, it was submitted to arbitrators, "to settle without further litigation the many actions and causes of action existing between (the parties)   *   *   * and all other actions or causes of actions now existing and unsettled."

The award of the arbitrators held that all matters in difference between the parties were settled by the contract of January 10, 1872, and then proceeded: "This award is not intended to determine any of the rights of either of the said parties, arising under" said contract.  *Held,* that the award should be set aside, on the ground that it did not specifically and finally terminate the rights of the parties thereto.

APPEAL from an order made at the Special Term, vacating and· setting aside an award of arbitrators.

*Tracy & Catlin*, for the appellants.

*Moody B. Smith*, for the respondent.

DYKMAN, J.:

In January, 1870, the defendant Abby Welwood was the owner of a large tract of land, in a place now called Breslau, in Suffolk county, in this State. She had owned it for many years. In 1869 her husband had caused some of this land to be divided into lots, and had sold many of the lots. In the month of January, 1870, Thomas Welwood made an arrangement with Charles S. Schleier, the plaintiff's assignor, by which Schleier was to undertake the sale of these lots, and for his services was to have a share of the profits realized from the sale, after deducting from the price received for each lot sold the fixed estimated value or first cost· thereof. Under this arrangement the business of selling lots at Breslau was carried on with great success; a great many lots were sold; a great deal of money collected, and large profits realized. In August, 1871, the accounts fell into confusion, and serious difficulties between the parties began to manifest themselves. Efforts were made to settle these differences from time to time, until the 10th day of January, 1872, when, for the purpose of making a full and final adjustment of all matters in dispute, a contract in writing was made between the parties, by which Mrs. Welwood agreed to sell to Mrs. Schleier the lands at Breslau, at a price and upon the terms specified in the agreement.

This contract went into effect, and the parties acted under it until April, 1872, when it was rescinded by mutual consent. Then Schleier brought one or two actions against Welwood and wife, and actions were commenced by other parties, and by the plaintiff in this action, and these actions were going on with more or less activity until the 22d day of October, 1875, when the plaintiff and defendants, and all other parties interested, entered into an agreement, by which they submitted all of the actions, and all the matters in dispute, to the decision and arbitration of two arbitrators. In the submission to arbitrators the following language is used:

" In order to settle, without further litigation, the many actions and causes of action now existing between Thomas Welwood and Abby Welwood of the one part, and Charles S. Schleier, Charlotte A. Schleier, Charles Jones, assignee in bankruptcy of said Charles S. Schleier, Martin Ruger, Frederick Mahr and Robert Suilka, which actions are as follows (naming them all), and all other actions or causes of actions now existing and unsettled."

Under this agreement the arbitrators entered upon the discharge of their duties, heard the testimony of the parties, and, on the 2d day of May, 1876, made an award, by which they found and determined, substantially, that Abby Welwood was the owner of the lands at Breslau, and entitled to hold the same, free from any claim of Schleier or his assignee in bankruptcy, Mr. Jones. That all business matters between the Welwoods and Schleier, in relation to the lands at Breslau, were adjusted and settled, satisfied and discharged by the agreement in writing of January 10, 1872; "that the same was accepted and received by the said Charlotte A. Schleier and Charles S. Schleier in full satisfaction of all such matters, cause or causes of action, and that said Charles S. Schleier, bankrupt, and the plaintiff, Charles Jones, assignee in bankruptcy of said Charles S. Schleier, have no cause of action against the said Thomas Welwood and Abby Welwood, or either of them, arising out of said business transactions, and that the said Charles Jones, as assignee in bankruptcy of said Charles S. Schleier, bankrupt, has no right to maintain said actions, or either of them, against said Thomas Welwood and Abby Welwood, or either of them, and that the said defendants, Thomas Welwood and Abby Welwood, are entitled to judgments dismissing the complaints in the actions above mentioned, and we do order and award that judgments be entered in the said several actions in favor of the defendants therein, and against the plaintiff therein, without costs. Third, that the claims of Thomas and Abby Welwood, proven in the matter of Charles S. Schleier, bankrupt, so much thereof as relates to any transactions, claims or demands held by them or owned by them, or either of them, against Charles S. Schleier, prior to the 10th day of January, 1872, be and the same hereby are declared to be satisfied by the contract of January 10, 1872, and shall be expunged from the claims proven against said Charles S. Schleier, bankrupt."

The award then closes as follows : " This award is not intended to determine any of the rights of either of the said parties arising under the contracts of the 10th day of January, 1872."

This award was set aside, on motion, by the Special Term, and the case comes to us on an appeal from that order.

About a century ago the courts in England were very much opposed to the withdrawal of controversies from their jurisdiction by the agreement of parties. At that time arbitrations and agreements to arbitrate were in great disfavor, and it was difficult to sustain an award in any of the courts of that country, no matter how carefully it was drawn. Since that time, however, both in England and in this country, the courts have not only yielded their opposition to these tribunals but have come to regard them with great favor, and actually to make presumptions to sustain their awards. This change is doubtless owing to the fact, that experience has shown these tribunals to be very useful in the adjustment of legal controversies. They are more speedy and less expensive than the law courts, and as a general rule they are final and subject to no judicial control.

The principle which underlies this last rule is, that under a general submission to arbitration all questions in the case, both of law and fact, are submitted to the arbitrator for decision and determination. His award cannot therefore be impeached nor set aside for any error, either of law or fact, provided he keeps within his jurisdiction. When parties agree to arbitrate they establish a domestic tribunal of their own, over which the courts possess no general supervisory power. The whole thing rests in the agreement of the parties ; and as they have agreed to submit and agreed to be bound by the award, the courts leave them where they have left themselves.

The subject has, however, occupied the attention of the legislature of our State, and it has made some provisions in respect to setting aside these awards, and has provided that they may be set aside on the ground, among others, " that the arbitrators exceeded their powers, or that they so imperfectly executed them that a mutual, final and definite award on the subject-matter submitted was not made."

Now, tested by this rule ought this award to be vacated ? Have

the arbitrators so executed the powers with which they were clothed by the submission that a final and definite award on the subject-matter submitted to them has been made? This depends upon what was submitted. The language of the submission is very broad; it is: "In order to settle the many actions and causes of action now existing and all other actions or causes of action now existing and unsettled," "and further, in order to settle without further litigation." We think all actions and causes of action between these parties were submitted to the arbitrators; and we think, further, that they have not made any final or definite award on the subjects so submitted.

The award which they made determined that Abby Welwood was the sole owner of the land at Breslau, and that the written contract of January tenth was designed as a final settlement of all transactions, and then declined to determine any of the rights of either of the parties under that contract.

Instead of defining the rights of these parties finally, as they were required to do, this award leaves them all indefinite and undetermined. Now, suppose the agreement of January tenth was designed as a final settlement up to that time; it seems to be conceded, on all sides, that that has been rescinded by mutual consent of the parties. What is the effect of this rescission? Did it remit the parties to their original positions which they occupied before it was made? If it did, then it made no difference whether the arbitrators determined the rights of the parties under it or not, for whatever their rights under it were they ceased with its rescission, except so far as acts which had been done under it were concerned. There was no question here about the right to rescind, for it was mutual. The rescission was complete, and the whole of the transactions are thrown open again to be determined in some way. How that is to be accomplished we need not now determine. The arbitrators have not done it, and have really done nothing towards it.

Courts of equity enforce these awards of arbitrators now, specifically, in the same manner as they enforce contracts. (*Bouck* v. *Wilber*, 4 Johns. Ch., 405.) Now suppose either of these parties should call upon a court of equity to enforce this award, what is there that a court of equity could enforce? Is the award so specific and final

that it can be enforced so as to settle the rights of these parties?
We think it is not; we think, without pursuing this line of argument further, that this award ought to be vacated; and we have reached that conclusion with reluctance.

The finality of the decision of arbitrators is a great point in their favor, because it saves the expense and delay of a tedious litigation in the courts. At the same time the rights of parties must be determined and protected, and the court must watch over them and guard them with a careful and vigilant eye, and when, as in this case, a tribunal has not discharged its proper functions, the courts must interpose.

The order appealed from must be affirmed, with costs and disbursements.

PRATT, J., concurred. BARNARD, P. J., not sitting.

Order affirmed, with costs.